[Cite as *Scott v. Scott*, 2022-Ohio-1052.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

DALE SCOTT, ET AL.,

Plaintiffs-Appellees,

v.

STEVEN A. SCOTT,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 CO 0014**

---

Civil Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2020 CV 387

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Reversed and Remanded

---

*Atty. Jeffrey Jakmides* and *Atty. Julie Jakmides Mack*, 325 E. Main Street, Alliance, Ohio 44601, for Plaintiffs-Appellees and

*Atty. Mark Mikhaiel*, Schneider, Smeltz, Spieth, Bell LLP, 1375 East 9th Street, Suite 900, Cleveland, Ohio 44114, for Defendant-Appellant.

Dated:
March 25, 2022

**Donofrio, J.**

{¶1}    Appellant Steven Scott (appellant) appeals from a May 4, 2021 Columbiana County Common Pleas Court judgment ordering him to pay unpaid rent, repairs, and attorney fees to appellees Dale and Diane Scott (appellees), his parents.

{¶2}    On September 16, 2020, appellees filed a complaint for forcible entry and detainer against appellant in Columbiana County Municipal Court. They alleged that they entered into an oral lease agreement with appellant on or about December 13, 2019 for a month-to-month tenancy, with an option to purchase the property if he remained current in lease payments. Despite alleging an oral agreement, appellees attached a copy of a written lease agreement to their complaint. They averred that for eight months, appellant failed to make the $1,070.00 monthly rent payments. They requested appellant's eviction from the property under R.C. 5321.03 due to default in rent payments. They alleged that since serving him with the three-day eviction notice, appellant had not brought his balance up to date, provided any payment, or left the property. Appellees requested eviction and money damages for unpaid rent, late charges, unpaid utility bills, damage to the property, and attorney fees.

{¶3}    On September 16, 2020, the Columbiana County Municipal Court scheduled a forcible entry first cause hearing for September 29, 2020.  Appellant's counsel filed a notice of appearance on September 28, 2020.  He also filed a motion to continue the hearing, explaining that he was retained on September 23, 2020 and "needed more time to prepare adequately."  The court denied the motion for continuance.

{¶4}    On the date of the hearing, appellant filed an answer and included a counterclaim alleging performance under the statute of frauds, unjust enrichment, and damages. He averred that he entered into a written contract with appellees on June 16, 2020, which was backdated to December 13, 2019. He stated that he signed the contract only because appellees threatened to forcibly remove him from the property if he did not. Appellant averred that in March 2018, he and appellees had a verbal agreement that he would buy the property in the future, so he started making improvements to the property. He alleged that he paid appellees $500.00 per month and paid the property taxes until

December 2019. He averred that appellees took possession of the property in December 2019, he detrimentally relied on their promises, and he partially performed by taking possession of, making improvements on, and paying partial consideration for, the property. On his unjust enrichment claim, he alleged that he spent over $40,000.00 in materials and over $40,000.00 in his own labor costs to improve the property.

{¶5}  Appellant also filed a motion to transfer his case to the Columbiana Court of Common Pleas because the recovery of sums in his counterclaim exceeded the municipal court's jurisdictional amount of $15,000.00.

{¶6}  The municipal court held a first cause hearing on September 29, 2020, noting that the issue before it was appellees' right to possess the property. (Sept. 29, 2020 Tr. at 2).  On the record, appellant's counsel agreed that monthly payments had not been made since June, but he asserted that appellant had made other payments, although no receipts existed. When the court asked if appellant wished to proceed and take evidence, or if he wanted to acknowledge non-payment of rent, appellant agreed that he had not paid rent since July. The municipal court concluded that appellees were entitled to possession of the property based upon non-payment of rent and the court ordered appellant to vacate the property. The court scheduled a second cause hearing for damages for November 17, 2020.

{¶7}  On October 28, 2020, the municipal court granted appellant's motion to transfer the case and certified the case to the Columbiana County Court of Common Pleas. After the common pleas court held a telephone conference, an order was issued scheduling the trial for April 29, 2021, the pretrial on March 29, 2021, and the discovery deadline for "30 days prior to trial."

{¶8}  On February 18, 2021, appellees filed a notice of their first set of interrogatories and production of documents propounded on appellant.

{¶9}  On March 22, 2021, appellant filed a motion to continue the April 29, 2021 "hearing," stating that his counsel needed more time to prepare. Appellees objected, and after a hearing, the court denied appellant's motion.

{¶10}  Appellees filed their witness and exhibit lists with the court and provided them to appellant's counsel. On April 19, 2021, appellant's counsel served discovery on appellees. The parties filed trial briefs, in which appellees stated that the parties executed

a lease while appellant was living at the residence and he failed to abide by its terms. They stated that, "[t]his was not disputed before the Municipal Court." Appellees noted that they bought the house in 2018 and allowed appellant to live there and make improvements, but they did not require or request the improvements. They asserted that although appellant would probably claim the existence of an oral purchase agreement or a written purchase agreement, he never fully disclosed the entirety of either of such an agreement to them. They further noted that even if an agreement existed, appellant had no present or future interest in the property as he had defaulted on payments and had no right to inherit the property.

**{¶11}** Appellees requested that the court bar appellant from introducing testimony from any witness at trial because he failed to comply with discovery and discovery deadlines. They stated that appellant did not disclose his expert witness until April 19, 2021, ten days before trial, and he provided no expert report. They further noted that appellant provided discovery over a month late, he provided no written responses to their requests for document production, and more than half of the requested documents were not provided. They also complained that many of the produced documents looked like scanned receipts, but were unreadable.

**{¶12}** On April 29, 2021, appellant filed his trial brief. He noted in that brief that at the municipal court hearing, he acknowledged that he had paid rent once since December 2019. He stated, however, that he had paid double rent when he signed the June 16, 2020 written agreement, which was the date that the lease actually began. He asserted that the three-day eviction notice was placed on his door on July 9, 2020, and he failed to pay rent for August and September 2020. He indicated that he did make "house payments" that appellees took, but they did not provide him with receipts. He asserted that he made many attempts to buy the house, but appellees ignored him or added stipulations. Appellant submitted that when appellees first bought the house in 2018, the parties understood that appellant would buy it from them at a future date, and appellees did not mention rent until late 2019, nearly two years after he relied to his detriment on appellees' statements and made improvements to the property.

**{¶13}** Appellant also acknowledged that he provided late discovery. He explained that his counsel lost the original discovery documents when counsel changed his

Case No. 21 CO 0014

employment and moved into a new location. He also stated that he did not have to provide written responses to requests for production of documents because his interrogatories and the documents he did produce covered every request. He also acknowledged that some materials were difficult to read, but it was the best that he could provide.

**{¶14}** On April 29, 2021, the trial began. The court stated that it had spoken to counsel before trial and informed them that no change would be made to the rulings made by the municipal court. (Apr. 29, 2021 Tr. at 3). The court further noted that it had not received a witness list from appellant, and appellees had raised discovery issues that may bar appellant from calling certain witnesses. (*Id.*). The court also cautioned the parties that while underlying family issues existed between them, those issues would not be tried in the court. *(Id.)* The court stated:

> This is merely about a property that was purchased, a lease
> agreement that has already been found valid, and the issues of
> the damages as well as the counterclaims that is it.

(Apr. 29, 2021 at 4).

**{¶15}** Appellees' first witness was an attorney who testified about the reasonableness of the attorney fees that they had requested in the case. They then called appellee Dale Scott to the stand. He testified about the lease agreement "that was approved by Judge McNicol," which contained the signatures of appellees and appellant. (Apr. 29, 2021 Tr. at 10). He identified the months that appellant failed to pay rent and confirmed that the municipal court ordered appellant's eviction due to nonpayment of rent. (*Id.* at 10-11). He stated that appellant left the residence in an unlivable condition and estimated $3,000.00 for materials he bought to repair the house. (*Id.* at 11-13). He also explained that he did not charge for his labor and they could not rent the house out until February 1, 2021 because of its condition. (*Id.*).

**{¶16}** On cross-examination, appellant's counsel asked to admit an item into evidence, which he identified as a text message of discussions between appellant and appellee Dale Scott which showed that a rental agreement was not signed until June 2020. (Apr. 29, 2021 Tr. at 16). The court noted that the message was undated and

appellees' counsel objected to its admission, asserting res judicata as the municipal court already determined the validity of the lease. The court agreed.

{¶17} Appellant's counsel asked appellee Dale Scott why the option to purchase never materialized, and he testified that appellant did not meet the lease term that required him to be current in payments. (4/29/21 Tr. at 18). Appellant's counsel asked the court for permission to admit another exhibit into evidence, and appellees again objected, stating that the exhibit contained text messages which had nothing to do with the issues at hand and which had not been turned over in discovery. (*Id.* at 16). Appellant's counsel explained that he wanted to use the messages to show that appellant made numerous attempts to exercise the option to purchase. (*Id.*). The court sustained the objection, finding that the question was asked and answered since the lease clearly stated that appellant could not be in default of rent payments and appellee Dale Scott had testified that appellant was delinquent in rent payments, so the option to purchase was not considered. (*Id.*).

{¶18} The parties then discussed the failure to provide timely discovery. The court held that any material not provided to appellees within the discovery deadline was inadmissible. (Apr. 29, 2021 Tr. at 19-20). Appellant's counsel admitted providing late discovery, but stated that it was provided before trial. (*Id.* at 20). The court told appellant's counsel that he should have filed a motion for extension if he could not make the discovery deadline. *(Id.)*. Appellant's counsel stated that he filed a motion to continue, but the court pointed out that the motion to continue was not filed until after the deadline had elapsed. *(Id.)*.

{¶19} Appellant's counsel then tried to admit text messages between appellant and appellee Dale Scott allegedly showing that appellee Dale Scott acknowledged appellant's interest, tax, and other payments made on the property. (Apr. 29, 2021 Tr. at 21-22). The court excluded these messages and ruled that counsel could not rely on or read from the messages. (*Id.* at 21). The court also found that communications were not proof of payments made by appellant. (*Id.* at 21-22).

{¶20} Appellant testified on his direct examination, stating that he had a purchase agreement with the house's prior owners, but he could not secure financing because of the house's poor condition. (Apr. 29, 2021 Tr. at 25). He testified that they

agreed that he could buy the house if he could get it in proper condition so that the bank would finance the loan. (*Id.*). He stated that he could not meet the deadline, and appellees bought the house so that he could buy it back from them. (*Id.* at 26). Appellant further testified that after the purchase, he began making improvements and repairs to it. (Apr. 29, 2021 Tr. at 27). Appellant's counsel attempted to admit exhibits, but appellees objected, stating that the exhibits were not provided to them until the week of trial and were otherwise irrelevant since the value of appellant's services was not recoverable under his unjust enrichment claim. (*Id.* at 28). The court reviewed the exhibits and sustained the objection, finding that they were not timely provided, one exhibit was an undated snapchat photo, another was a photo that looked like items being removed from a property but no foundation was laid for its admission, and other exhibits were receipts for materials bought with no indication that they went to the house and one predated the purchase of the house. The court ruled that appellant could testify as to the repairs. (*Id.* at 28-29).

{¶21}   Appellees also objected to an attempt by appellant's counsel to admit additional evidence, and the court held that it would not be admitted if it was not offered prior to the discovery deadline. (Apr. 29, 2021 Tr. at 33-36). Appellant's counsel tried to explain why the discovery was late, but the court cut him off, telling him that he had already offered his explanation. Appellant's counsel stated that it was unfair to his client to exclude evidence when it was his fault for misplacing the documents. (*Id.* at 36). The court responded that had the evidence been timely produced, an appraisal could have been done to determine whether appellant's $80,000.00 estimate for his repairs, materials, and labor, which happened to exactly match the price of the house, was reasonable. (*Id.* at 36-37).

{¶22}   The court repeated that the municipal court had already determined that a valid agreement existed between the parties. (Apr. 29, 2021 Tr. at 39-43). Appellant's counsel stated that appellant paid cash to appellees and was not given receipts, but the court reiterated that text messages between the parties did not constitute evidence to establish these payments. *(Id.* at 42-43). The court stated that appellant could show withdrawals from his bank account to reflect the payments or he could present W2s showing that he had sufficient income to make such payments. *(Id.).*

**{¶23}** Appellant's counsel called appellant back to the stand as a lay witness. (Apr. 29, 2021 Tr. at 43). He testified that he was a self-employed mechanic and made $20,000.00 his first year of self-employment and $30,000 the following year as he spent most of his time and money improving the house. *(Id.* at 44-46). He also testified that the house was not livable before he moved in and made repairs. (*Id*).

**{¶24}** On cross-examination, appellant acknowledged that appellees bought the house after he could not obtain financing due to the property's condition. (Apr. 29, 2021 Tr. at 47-49). He testified that although he had no signed agreement, he had an oral agreement between a father and son to show that the house was going to be his. Appellees' counsel asked for the terms and monthly payment amount of the verbal agreement that he alleged, but appellant stated that appellee Dale Scott never gave him a straight answer and the payment increased and decreased. (*Id.* at 48-50). He also acknowledged working on the house knowing that he did not own it. (*Id.* at 51).

**{¶25}** Appellant's counsel called his expert witness to testify, but appellees objected, asserting that they did not receive timely notice of the expert or an expert report. (Apr. 29, 2021 Tr. at 52). The court sustained the objection. (*Id.*). Appellant's counsel also called appellant's fiancée to the stand and appellees' counsel again objected for the same reasons. The court sustained the objection. (*Id.*).

**{¶26}** After closing arguments, the court granted appellees' claims for money damages and attorney fees, and found no merit to appellant's unjust enrichment counterclaim. On May 4, 2021, the court issued its judgment entry and ordered appellant to pay $16,410.00 in damages to appellees, with $4,850.00 of that award for attorney fees and $3,000.00 for repairs by appellees. The rest was for unpaid rent.

**{¶27}** On May 27, 2021, appellant filed his notice of appeal to this Court.

**{¶28}** In his first assignment of error, appellant asserts:

> **ASSIGNMENT OF ERROR 1: The Trial Court's Decision to Apply Res Judicata as to the Enforceability of the Lease Agreement in this case was error.**

**{¶29}** In his second assignment of error, appellant asserts:

**ASSIGNMENT OF ERROR 2: The Trial Court Erred and Abused its Discretion when it Granted Judgment in Favor of Appellees and Barred Defendant-Appellant from Presenting any Evidence Relating to the Defendant-Appellant's Counterclaim or Defenses at the April 29, 2021 Trial.**

{¶30} In his third assignment of error, appellant asserts:

**ASSIGNMENT OF ERROR 3: The Trial Court Erred and Abused its Discretion when it Failed to Grant Defendant-Appellant's Motion for Continuance.**

{¶31} Although neither party raises the issue, we hold that the municipal court lacked subject matter jurisdiction to determine the forcible entry and detainer action portion of this case when the counterclaim exceeded its subject matter jurisdiction.

{¶32} While municipal and common pleas courts have concurrent original jurisdiction over forcible entry and detainer actions, the jurisdiction of the municipal court is $15,000.00. R.C. 1901.17. R.C. 1901.22(E) provides: "[i]n any action in a municipal court in which the amount claimed by any defendant in any statement of counterclaim exceeds the jurisdictional amount, the judge shall certify the proceedings in the case to the court of common pleas, except in the Cleveland municipal court." Civ. R. 13(J) states that "[i]n the event that a counterclaim, cross-claim, or third-party claim exceeds the jurisdiction of the court, the court shall certify the proceedings in the case to the court of common pleas." The Staff Note to Civ. R. 13 explains that the "rule provides for certification of the **complete** proceedings involved to the court of common pleas." [emphasis added].

{¶33} Consistent with these Rules, this Court has held that when a forcible entry and detainer action involves issues that exceed a municipal court's jurisdiction, the municipal court errs when it determines only one portion of the action instead of transferring the entire action to the common pleas court. *O'Hara v. Lloyd*, 116 Ohio App.3d 439, 440, 688 N.E.2d 544 (7th Dist. 1996), quoting *Richwood Homes, Inc. v. Brown*, 3 Ohio App.3d 204, 444 N.E.2d 463, paragraph two of the syllabus (1981).

**{¶34}** In *Rickard v. Solley*, 188 Ohio App.3d 205, 2010-Ohio-2786, 935 N.E.2d 64, ¶ 27, we found that certification to the common pleas court is not automatic when a party files a counterclaim requesting damages that exceed the municipal court's jurisdictional amount. We held that the municipal court "should first determine if the counterclaim satisfies the formalities of the civil rules and states a claim showing that the party is entitled to relief." *Id.*, quoting *Crisalli v. Mearini*, 8th Dist. Cuyahoga No. 84245, 2004-Ohio-6018, citing *Hersch v. Debreczeni*, 33 Ohio App.2d 235, 238–239, 294 N.E.2d 918 (1973). A municipal court is not required to conduct a trial on the merits of the counterclaim. *Hersch*, at 239. However, that court must determine whether the requirements of the Civil Rules are satisfied and "whether the counterclaim contains a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*

**{¶35}** Most Ohio courts require a municipal court to transfer the entire forcible entry and detainer action to the common pleas court when a counterclaim exceeds its subject matter jurisdictional amount, with only the Fifth District allowing bifurcation in certain cases. *See Thompson v. Hansford*, 9th Dist. Summit No. 29226, 2019-Ohio-2612, ¶11 (municipal court lacked jurisdiction to determine forcible entry and detainer action when counterclaim exceeded $15,000.00 and both were so intertwined that they could not be decided separately); *accord State ex rel El Turk v. Comstock*, 2018-Ohio-2125, 113 N.E.3d 1122, (8th Dist.) (municipal court required to certify entire forcible entry and detainer case to common pleas court after municipal court determined counterclaim was authentic and exceeded jurisdiction); *State ex rel. Pennington v. Fiehrer*, 12th Dist. Butler No. CA93-08-167, 1993 WL 491631, *2 (Nov. 29, 1993) ("[t]he simple language of R.C.1901.22(E) * * * suggests that a municipal court has no choice but to certify or transfer a case where a counterclaim exceeds the applicable jurisdictional ceiling."); *State, ex rel. Penn v. Swain*, 21 Ohio App.3d 119, 121 (11th Dist.1984)("[a] logical interpretation" of Rule 13(J) "requires the entire case to be certified to the common pleas court."); *contra Lyons v. Link*, 5th Dist. Knox No. 2003-Ohio-2706, (municipal court could determine forcible entry and detainer portion of the case and transfer counterclaim that exceeded its jurisdiction to common pleas court as it was capable of separation); *but see Isiah's Wings, LLC v. Mount*, 5th Dist. Knox No. 2005-CA-39, 2006-Ohio-3573, ¶ 4- ¶ 6 (distinguishing *Lyons* by finding that municipal court can sometimes rule on an eviction

action without affecting other claims of the parties, but cannot when "the counterclaim * * * is so interrelated as to require the issues all be heard together.").

**{¶36}** Consistent with our prior rulings, we hold that the municipal court erred when it bifurcated the forcible entry and detainer action and determined that part of the action when the amount of the counterclaim exceeded its subject matter jurisdiction. Since the municipal court's judgment as to eviction is void and cannot stand, the common pleas court proceedings and judgment concerning damages cannot stand since they are based upon a void municipal court judgment. Accordingly, we reverse the Columbiana County Court of Common Pleas judgment and remand the instant case to that court to determine the entire action. The case shall not return to the Columbiana County Municipal Court.

**{¶37}** For these reasons, we decline to address appellant's assignments of error and reverse the judgment of the Columbiana County Court of Common Pleas and remand the case in its entirety to that court for full determination.

Waite, J., concurs.

D'Apolito, J., concurs.

Case No. 21 CO 0014

-------------------

For the reasons stated in the Opinion rendered herein, we decline to address appellant's assignments of error and vacate the municipal court judgment as void because it lacked subject matter jurisdiction to bifurcate the instant action. Consequently, we reverse the Columbiana County Court of Common Pleas judgment since it was based upon a void municipal court determination. We remand the case to the Columbiana County Court of Common Pleas to determine the case in its entirety.  Costs to be taxed against Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**